IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA AKINS, as successor in interest to SAMUEL WYNN, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>B. MOSS, et al.,<br><br>    Defendants. | No. 2:21-CV-1317-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff, as successor-in-interest for deceased inmate Samuel Wynn, who is proceeding with retained counsel, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court are: (1) Defendants' motion for judgment on the pleadings, ECF No. 63; and (2) Plaintiff's motion for leave to amend, ECF No. 64. The parties appeared before the undersigned for a hearing on both motions via Zoom on September 10, 2025, at 10:00 a.m. Zachary Linowitz, Esq., appeared for Plaintiff. Jennifer Burns, Esq., appeared for Defendants. After hearing the parties' arguments, the matters were submitted.

/ / /

/ / /

/ / /

/ / /

1

I.  BACKGROUND

A.  **Plaintiff's Allegations**

This action proceeds on Mr. Wynn's pro se complaint. See ECF No. 1. The complaint names the following as defendants: (1) B. Moss, a Correctional Officer at high Desert State Prison (HDSP); (2) L. Mundy, a Correctional Officer at HDSP; and (3) J. Pickett, the Chief Deputy Warden at HDSP. See id. at 3.

In his first claim, Mr. Wynn alleged that, on February 21, 2021, he saw Defendant Moss removed his face mask and "spit a glob of chewing tobacco spit into a garbage can filled with I/M [inmate] lunches." Id. According to Mr. Wynn, Defendant Mundy witnessed this and still proceeded to hand out the lunches, giving one of them to Mr. Wynn. See id. Mr. Wynn alleged that, despite his complaints about potential contamination, Defendant Mundy continued passing out the inmate lunches. See id. at 3-4. Mr. Wynn stated that, a short time later, Defendant Mundy "came back and handed me and my cellie two more lunches and said, 'Don't shoot the messenger.'" Id. at 4. Mr. Wynn stated that Mundy also said: "I wouldn't have did no jackass shit like that." Id. Mr. Wynn claimed that, as a result of the foregoing, he remained in fear of eating any food at the prison. See id.

In his second claim, Mr. Wynn stated he submitted a grievance on March 2, 2021, regarding the conduct of Defendants Moss and Mundy. See id. According to Mr. Wynn, the grievance was processed by Defendant Pickett who allegedly "elected to disregard the overwhelming amount of evidence against Defendants B. Moss and L. Mundy and instead chose to attempt to cover-up the malicious acts of abovementioned Defendants by disapproving the Plaintiff's appeal." Id.

B.  **Procedural History**

On August 25, 2021, the Court issued an order addressing the sufficiency of the original complaint. See ECF No. 25. In that order, the Court determined that Mr. Wynn had stated a plausible claim for relief under the Eighth Amendment against Defendants Moss and Mundy arising from the events of February 2, 2021. See id. The Court provided Mr. Wynn an opportunity to amend in order to address deficiencies as to his claim against Defendant Pickett

2

arising from processing of Mr. Wynn's grievance. See id. After Mr. Wynn failed to file a first amended complaint within the time provided, the Court issued an order directing service of the original complaint on Defendants Moss and Mundy as to the Eighth Amendment claim, see ECF No. 13, and findings and recommendations for dismissal of Defendant Pickett as to Plaintiff's claims regarding processing of his grievance, see ECF No. 16. The findings and recommendations were adopted in full by the District Judge on December 16, 2021, and Defendant Pickett has been dismissed. See ECF No. 22.

Defendants Moss and Mundy filed their answer to Plaintiff's remaining Eighth Amendment claim on June 13, 2022. See ECF No. 29. On June 23, 2022, the Court issued a discovery and scheduling order, setting a discovery cut-off date of January 23, 2023. See ECF No. 30. On June 6, 2023, the discovery cut-off deadline was extended to September 1, 2023. See ECF No. 39. On January 22, 2024 – after the close of discovery – Defendants filed a notice of suggestion of death of Mr. Wynn. See ECF No. 44. On March 4, 2024, the current Plaintiff – Ms. Akins, who is Mr. Wynn's sister – sought substitution as successor-in-interest to Mr. Wynn. See ECF No. 46. On August 26, 2024, the Court stayed proceeding pending resolution of Ms. Akins' motion to substitute. See ECF No. 51. Ms. Akins filed a renewed motion to substitute on January 8, 2025, see ECF No. 54, and Defendants filed a notice of non-opposition on January 28, 2025, see ECF No. 57. On June 24, 2025, the Court granted the unopposed renewed motion to substitute and lifted the stay of proceedings. See ECF No. 62. The Court extended the discovery cut-off date to September 1, 2025, and ordered dispositive motions to be filed within 90 days thereafter. See id.

## II. DISCUSSION

In their motion for judgment on the pleadings, Defendants argue that Mr. Wynn's allegation of a one-time contamination of his food cannot sustain a conditions-of-confinement claim under the Eighth Amendment. See ECF No. 63. In her motion for leave to amend, Plaintiff argues that she should be permitted to amend the original pro se complaint to add new claims for retaliation, unlawful seizure of property, and violation of the Americans with Disabilities Act

(ADA).  See ECF No. 64.  Plaintiff has submitted a proposed first amended complaint.  See ECF No. 64-1.  Because an amended complaint would render Defendants' motion moot, Plaintiff's motion for leave to amend is discussed first.

### A.      Leave to Amend

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course within 21 days of serving the pleading or, if the pleading is one to which a responsive pleading is required, within 21 days after service of the responsive pleading, see Fed. R. Civ. P. 15(a)(1)(A), or within 21 days after service of a motion under Rule 12(b), (e), or (f) of the rules, whichever time is earlier, see Fed. R. Civ. P. 15(a)(1)(B).  In all other situations, a party's pleadings may only be amended upon leave of court or stipulation of all the parties.  See Fed. R. Civ. P. 15(a)(2).  Under this Court's local rules, a motion for leave to amend must be accompanied by a proposed amended complaint filed as an exhibit to the motion. See E. Dist. Cal. Local Rule 137(c).

Where leave of court to amend is required and properly sought, the Court considers the following factors: (1) whether there is a reasonable relationship between the original and amended pleadings; (2) whether the grant of leave to amend is in the interest of judicial economy and will promote the speedy resolution of the entire controversy; (3) whether there was a delay in seeking leave to amend; (4) whether the grant of leave to amend would delay a trial on the merits of the original claim; and (5) whether the opposing party will be prejudiced by amendment.  See Jackson v. Bank of Hawai'i, 902 F.2d 1385, 1387 (9th Cir. 1990).  Leave to amend should be denied where the proposed amendment is frivolous.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

As reflected in the proposed first amended complaint at ECF No. 64-1, Plaintiff Akins seeks to add the following new claims: (1) a retaliation claim against Defendant Mundy and unnamed Doe defendants alleging that, shortly after the events at issue, Defendants retaliated against Mr. Wynn for having filed an inmate grievance and this lawsuit relating to the contaminated lunch; (2) an unlawful seizure claim under the Fourth Amendment against unnamed Doe defendants arising from alleged withholding of Mr. Wynn's personal and legal materials

4

following his death; and (3) a claim against the California Department of Corrections and Rehabilitation (CDCR) for violation of the ADA following Mr. Wynn's transfer from HDSP after commencement of this litigation.  See id.

In her motion for leave to amend, Plaintiff Akins argues amendment should be permitted for the following reasons: (1) there has been no undue delay because she sought leave to amend less than three weeks after the Court ordered substitution and only two weeks after Defendants moved for judgment on the pleadings; (2) there is no prejudice to Defendants because discovery is still open; and (3) amendment is not futile because the new claims are plausible.  See ECF No. 64, pgs. 3-5.  These arguments are unpersuasive.

First and foremost, as to delay, Defendants are correct that a substituted party steps into the same position as the original party.  See Hilao v. Estate of Marcus, 103 F.3d 762, 766 (9th Cir. 1996).  Thus, Ms. Akins diligence is measured from the time the original pro se complaint was filed and not from the time she was permitted to substitute as Mr. Wynn's successor-in-interest.  Plaintiff has not demonstrated diligence since the action was commenced in 2021.  Mr. Wynn would have known about the new retaliation and ADA claims long ago and did not seek to amend.[1]

Additionally, the new claims sought to be added are either not cognizable or not reasonably related to the original complaint.

### 1. Retaliation Claim

Ms. Akins seeks to add a new claim for retaliation.  In the proposed first amended complaint, Plaintiff alleges:

> 11. On March 2, 2021, Decedent filed a staff misconduct grievance regarding this incident [on February 21, 2021].  After the grievance was filed, MUNDY developed a personal grudge against Decedent and repeatedly returned to his cell to harass him.  MUNDY subjected Decedent to escalating tension, hostility, and subtle threats, at one point telling him to "watch his back" and warning him about the "white devils," referring to high-ranking prison officials.  MUNDY also demanded that Decedent disclose what he had said during his interview with prison investigators, further intimidating him.  As a result, Decedent began to suffer clear consequences of retaliation, including fear, anxiety, and a sense of

---

[1] As discussed below, the new proper deprivation claim is not cognizable.

5

>pervasive threat to his safety.
>
>\* \* \*
>
>15. After Decedent's claim was granted, he filed this civil rights action. After having been incarcerated at HDSP for approximately five years, Defendants CDCR and DOES 1–25 promptly transferred Decedent to three different prisons within a relatively short period following the filing of his lawsuit. The first of these transfers involved a grueling 14-hour bus ride to Calipatria State Prison, even though Defendants knew Calipatria is not a CCCMS (Correctional Clinical Case Management System) facility, and therefore lacks the baseline level of outpatient mental health care required under CDCR policy for inmates with particular psychiatric needs. Decedent, who had a documented psychiatric disability, was transferred there despite this mismatch, further exacerbating his mental health deterioration and requiring another transfer just 10 days later. From Calipatria, Decedent was sent to Salinas Valley State Prison in Soledad, and he was subsequently transferred once more to California Correctional Institution ("CCI") in Tehachapi. These repeated transfers had a significant destabilizing impact on Decedent, exacerbating his mental deterioration, increasing his sense of vulnerability and fear, and undermining any continuity of care or stability he had established.

ECF No. 64-1, pgs. 5, 6-7.

To state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

///

The new claim against Defendant Mundy is not reasonably related to the current Eighth Amendment conditions-of-confinement claim because: (1) it is based on different facts; and (2) it is based on different law. The new claim against unnamed Doe defendants is not reasonably related to the current conditions-of-confinement claim for the same reasons. Further, the claim against unnamed Doe defendants is not cognizable because Plaintiff has failed to allege that the unnamed Doe defendants were aware that Mr. Wynn had filed a grievance or initiated litigation. Given that Mr. Wynn is deceased and Ms. Akins was not present at the time, it is not possible that Ms. Akins could allege a set of facts to cure these defects.

2. <u>Seizure Claim</u>

Plaintiff seeks to add a new claim against unnamed Doe defendants based on seizure of Mr. Wynn's personal legal materials following his death. Plaintiff alleges as follows in the proposed first amended complaint:

> 17. Following [Mr. Wynn's death], CDCR has failed to return to Plaintiff any of Decedent's personal property—including his pro se legal paperwork and discovery materials—despite lawful requests. CDCR's retention of this property has unjustly prevented Plaintiff from completing an accidental death insurance claim on behalf of Decedent. Furthermore, CDCR's retention of Decedent's legal and personal materials has impeded Plaintiff's ability to effectively prosecute this case by depriving her of critical evidence and case documents.

ECF No. 64-1, pg. 7.

This claim is not cognizable. Where a prisoner alleges the deprivation of a property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See <u>Zinermon v. Burch</u>, 494 U.S. 113, 129-32 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See <u>Hudson</u>, 468 U.S. at 531 n.11 An available state common law tort claim procedure to recover the value of property is an adequate remedy. See <u>id.</u> at 128-29. Here, California provides remedies for deprivation of Plaintiff's property by way of a tort claims process under state law. Moreover, prisoners have no Fourth Amendment right to be free from seizures of their personal property. See <u>Hudson v. Palmer</u>, 468 U.S. 517,

7

536 (1984).

Finally, this new claim based on deprivation of property has no relationship to the original conditions-of-confinement claim arising from events of February 21, 2021, because the claims have no legal issues in comment and arise from completely a different set of facts.

    3.  ADA Claim

Plaintiff brings this new claim for violation of the ADA against CDCR. As alleged in the proposed first amended complaint:

> 32. At all relevant times, Decedent was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as he had a documented psychiatric disability requiring mental health treatment, support, and programming.
> 33. While housed at HDSP, Decedent was receiving mental health treatment appropriate to his diagnosed psychiatric conditions. Shortly after the filing of this action, however, CDCR transferred Decedent to Calipatria State Prison, a facility that lacked the capacity to accommodate his mental health needs, despite knowing of his documented disability and required treatment level. He was needlessly subjected to a grueling, distressing transfer, only to be transferred again after just 10 days.
> 34. As a result of this unjustified transfer, Decedent was denied meaningful access to necessary mental health services and programs, causing deterioration of his psychological condition and placing him at increased risk of harm.
> 35. CDCR's decision to transfer Decedent to an institution unable to accommodate his disability constituted discrimination on the basis of disability and a failure to provide reasonable accommodations, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

ECF No. 64-1, pgs. 11-12.

As with Plaintiff's other proposed new claims, this claim has no relationship to the pending conditions-of-confinement claim, either legally or factually. Further, it seeks to impose liability against CDCR, which is immune under the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

  **B.**  **Judgment on the Pleadings**

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are similar to motions under Rule 12(b) in that judgment on the pleadings is appropriate if "... it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.

1988). Rather than testing whether the factual allegations state a claim, motions under Rule 12(c) test whether, even if all the facts alleged in the complaint can be proved, defendants are nonetheless entitled to judgment as a matter of law. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). All non-conclusory factual allegations in the complaint must be assumed to be true. See Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967); see also McGlinchy, 845 F.2d at 810.

Defendants argue that the remaining conditions-of-confinement claim fails as a matter of law. More specifically, Defendants contend that an allegation of a one-time instance of being served contaminated food does not rise to the level of a violation of Mr. Wynn's Eighth Amendment rights. See ECF No. 63-1, pgs. 3-4. In opposition, Plaintiff contends that Defendants' motion would be rendered moot by a first amended complaint. See ECF No. 66.

Defendants' argument is persuasive. As outlined above, Mr. Wynn alleged that he was served contaminated food on a single occasion – February 21, 2021. See ECF Nos. 1 (original complaint) and 64-1 (proposed first amended complaint). This is insufficient to state a claim. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); Islam v. Jackson, 782 F. Supp. 1111, 1114-15 (E.D. Va. 1992) (serving one meal contaminated with maggots and meals under unsanitary conditions for thirteen days was not cruel and unusual punishment, even though inmate suffered symptoms of food poisoning on one occasion); Willard v. Cal. Dep't of Corr. & Rehab., No. 19cv1074-AWI-SAB (PC), 2019 U.S. Dist. LEXIS 188512, at *22 (E.D. Cal. Oct. 29, 2019) (isolated and sporadic claims of contaminated food insufficient to state a claim under the Eighth Amendment); Johnson v. Dickinson, No. CV 14-3390-VBF (SP), 2017 U.S. Dist. LEXIS 236182, at *27 (C.D. Cal. Mar. 30, 2017) (single, isolated occurrence, in which plaintiff neither ate the food nor suffered injury from it insufficient to state Eighth Amendment claim); Bennett v. Misner, No. Civ. 02-1662-HA, 2004 U.S. Dist. LEXIS 19568, at *63 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation").

///

It should be noted that the February 21, 2021, incident was addressed in <u>Martinez v. Mundy</u>, 2:21-cv-1872-DAD-DMC-P. In that case, Mr. Martinez alleged that he was also served a contaminated lunch on February 21, 2021, at HDSP. <u>See</u> ECF No. 15 in <u>Martinez</u>. There, the Court determined that Mr. Martinez' claim of a one-time denial of appropriate food failed to state a claim. <u>See</u> ECF Nos. 38 in <u>Martinez</u> (findings and recommendations to grant Defendant's motion to dismiss) and 41 (District Judge order adopting findings and recommendations in full).

### III.  RECOMMENDATION

Based on the foregoing, the undersigned recommends as follows:

1. Plaintiff's motion for leave to amend, ECF No. 64, be denied.
2. Defendants' motion for judgment on the pleadings, ECF No. 63, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 22, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE